**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

Sasi Sheva

                  Plaintiffs,

            -against-

Delta Air Lines, Inc.


                  Defendants.
------------------------------------------------------X

**JURY TRIAL DEMANDED**

**CIVIL ACTION NO.:**
**9:24 cv 5778**


## <u>COMPLAINT FOR DAMAGES AND JURY DEMAND</u>

Sasi Sheva ("Plaintiff"), by and through their attorneys, Steven A. Feldman, Esq. and the Law Office of Steven A. Feldman & Associates, PLLC, working in association with the National Jewish Advocacy Center, Inc., alleges the following against Delta Air Lines, Inc. ("Delta" or "Defendant"):

### PARTIES

1. Plaintiff, Sasi Sheva is an employee of Defendant residing in Encino, CA.

2. Delta is a publicly owned corporation organized under the laws of the state of Delaware and has its principal place of business at 1030 Delta Boulevard, Atlanta, Georgia 30354, employing over 70,000 employees. Delta transacted and continues to transact business in New York and within Queens County by employing persons at JFK and LGA and conducting business within Queens County, New York. Delta

1

has at all relevant times been an "employer" covered by Title VII, the ADA, the NYSHRL, and the NYCHRL.

## JURISDICTION & VENUE

3. Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. §1367.

4. Plaintiff filed a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 13, 2024.

5. Plaintiff received a Right to Sue letter, dated May 21, 2024.  Accordingly, Plaintiff had to file Title VII claims by August 19, 2024, and this lawsuit is indisputably timely.

6. Plaintiff did not file with the New York State Division or City Commission, and accordingly jurisdiction for NYCHRL claims rests with this Court pursuant to the New York City Admin. Code §8-502(a).

7. Within ten (10) days of commencing this lawsuit, Plaintiff shall serve true and correct copies of this Complaint upon designated representatives for the New York City Commission on Human Rights and Corporation Counsel pursuant to New York City Admin. Code §8-502(c).

8. The New York City Human Rights Law claims herein were filed within three (3) years of the alleged unlawful discriminatory practice and/or harassment.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because

Defendant is subject to the court's personal jurisdiction within the Southern District of New York with respect to this action.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

11. Plaintiff has herein alleged claims pursuant to Title VII, the NYSHRL, and the NYCHRL complaint of discrimination/retaliation with the EEOC.

12. Plaintiff has received his Notice of Right to Sue letter from the EEOC regarding his complaints of discrimination/retaliation for the alleged Title VII claims herein within ninety (90) days of the filing of this Complaint.

## NATURE OF ACTION

### *Delta's Discrimination Against Jewish, Hebrew, and Israeli Employees*

13. Plaintiff is a Flight Attendant of Jewish and ethnic Israeli background and has worked for Delta for two and a half years.

14. At all times relevant hereto, Plaintiff performed the duties of his employment in a satisfactory manner was never disciplined or criticized for her job performance.

15. Defendant has engaged in a pattern of intentionally discriminating and retaliating against ethnically Jewish, Hebrew and/or Israeli employees based upon their race and ancestry, including Plaintiff.

16. Upon information and belief, at all pertinent times, Defendant acted or failed to act by and through its duly authorized agents, servants, representatives, partners, manager, supervisors and employees, who conducted themselves within the scope and course of their employment, with intentional malice and/or with reckless disregard to Plaintiff' federal and New York City statutory rights.

***Discrimination Based Upon National Origin & Religion***

17. On July 12, 2022, Plaintiff was in the middle of work trip when Defendant changed the timing of its flights on the day of his intended work-related flight. As a result, Defendant had to wake up early at 6:00 a.m. at layover hotel and work several flights.

18. Due to the last-minute schedule change, Defendant elected to transport Plaintiff in a van to the runway for his next flight to avoid delay.

19. Due to Delta's last minute flight time change they transported Plaintiff from one Aircraft to another on the runway ignoring Plaintiff numerous requests for a "safety break" to obtain a meal which accommodated his vegetarian restrictions due to the unforeseen time changes voiding his break. Plaintiff was refused.

20. Plaintiff had not had the chance to eat anything and requested of Delta managers that they stop for a few minutes in the concourse so that he could purchase a vegetarian snack.

21. Despite Plaintiff's employee profile clearly stating he is Hebrew-speaking,

4

Jewish and vegetarian, he was provided with a ham sandwich. Although Defendant does conduct training on cultural sensitivity for different types of passengers for a myriad of customer profiles, such training does not include the cultural and religious needs of Jews. Upon Plaintiff's complaint to New York-based manager Elanie Little, no action was taken to ensure that such an event did not happen again.

22. Plaintiff's religion-based workplace accommodation request was also refused in bad faith and with no justification.

23. As a result of Defendant's bad faith refusal to accommodate Plaintiff's religious needs despite ample notice of Plaintiff's need for accommodation, Plaintiff was required to work under unsatisfactory and dangerous conditions which a minor accommodation to a known religious requirement could have prevented.

24. As a practicing member of the Jewish faith, Plaintiff requires accommodation to avoid working on Yom Kippur, the holiest day in the Jewish calendar.

25. As a general rule, the flight attendants' schedule for each moth is "released" every 18th of the previous month so that employees prepare accordingly.

26. Upon information and belief, Delta always knows the date of Yom Kippur in advance as it needs to accommodate the Yom Kippur holiday in its airline-wide flight scheduling.

27. Plaintiff informed Delta of his accommodation needs when the August

2022 schedule was published, well in advance of Yom Kippur, and well in advance of when the corresponding October schedule was to be released. Plaintiff requested not to be scheduled for work on Yom Kippur, a day Jewish faith and tradition mandates fasting and near day-long synagogue attendance.

28. Plaintiff made his request 2.5 months in advance to be sure that he would not be scheduled to work flights on specific Jewish holidays including Yom Kippur, and offered to take a flight to Tel Aviv which lands in Israel before Yom Kippur.

29. In response, Delta's Accommodation Manager informed Plaintiff that to begin an accommodation review, he would have to provide a written statement in his own words, identifying the religious belief and practice requiring accommodation and documentation to support his request such as a statement from his religious leader on the letterhead of a religious organization, verifying his status as a practice member of the religious organization and explaining the religious belief and practice requiring accommodation. Plaintiff was never before required to engage in such intrusive examination of his private beliefs and practices, nor to his knowledge, was any other Delta employee.

30. According to Delta's guidelines, once such information is received "a specially designated accommodation program manager will schedule a meeting with the employee to discuss accommodation options". Plaintiff provided Delta's Accommodation Manager with the necessary documentation.

6

31. On August 23, 2022, Plaintiff was contacted by Delta's Accommodation Manager requesting to schedule a date and time for the accommodation review. She indicated, contrary to Delta's published policy, that Plaintiff had to participate in a meeting with not only herself but also with an HR representative and a New York-based manager.

32. The Accommodation Manager further informed Plaintiff that he would be required to explain his religious practices and beliefs and suggest accommodation ideas. She emphasized that in order to proceed with the accommodation request concerning Yom Kippur, he had to actively participate in the accommodation process and must attend an "accommodation assessment meeting".

33. Although the employment guidelines clearly establish that accommodation requests are to be handled between the employee and the accommodation manager with no provision for additional management to be involved, Plaintiff agreed to the meeting.

34. The accommodation request system provides that the information provided be complete and accurate to the best of the applicant's knowledge.

35. The meeting was held on August 30, 2022, and for about 10-15 minutes with all three managers. The meeting was attended by Ms. Elanie Little, the same New York manager who oversaw a previous expression of concern by Plaintiff regarding being served ham although he was vegetarian and Jewish. At the meeting,

Plaintiff was asked to come up with a suggested accommodation.

36. Plaintiff suggested Delta block October 4-5, 2022 from his schedule. As he did not have the necessary seniority to be assigned "attractive trips" which he could swap, he offered to work a Tel Aviv flight that landed before Yom Kippur and thereby resolve the need for religious accommodation.

37. Defendant immediately rejected the suggestion as it was "negating Delta's seniority system".

38. Ms. Little immediately informed Plaintiff that there was nothing they could do because any accommodation would negate Delta's seniority system and that the only option was to deal with it on his own. She informed him: "You can swap or drop your trip".

39. This response was no different than what could be obtained without an accommodation review.

40. Plaintiff indicated to Ms. Little that the solution was not really acceptable and that he didn't understand why Delta required him to go through the accommodations process for several weeks, provide his personal information to Delta, and undergo a process where he was required to share his personal religious practices with Human Resources and Delta's leadership when the answer to the request was unaccommodating and a foregone conclusion. Delta provided no other suggestions or alternatives, nor did Delta claim that accommodation would impose

any hardship on its operations.

41. Delta's response was not only non-accommodating but, after imposing unnecessary and unauthorized hardships on Plaintiff's accommodation application process, Delta's response was devoid of any attempt to find a mutually acceptable solution.

42. Delta provided no other suggestions or alternatives to Plaintiff nor did Delta claim that accommodation would impose any hardship on its operations.

**Plaintiff's Work-Related Injuries & Delta's Retaliation Against Plaintiff**

43. On July 5, 2022, Plaintiff had been injured while working for Delta when the Delta contractor transporting the flight attendants from the airport to the layover hotel was involved in a motor vehicle accident.

44. While transporting Plaintiff, the Delta contractor hit a parked vehicle. Due to the force of the hard impact, Plaintiff was forcefully and rapidly pushed back and forth striking his body hard against a seat.

45.  Plaintiff was injured as a result of this accident and immediately reported the incident and the injuries to Delta and its insurance carrier, Sedgwick Insurance, per their guidance.

46. Sedgwick Insurance accepted liability for Plaintiff's case and approved medical treatment.

47. As a result of his injuries, Plaintiff was off work on disability for several

weeks and received medical treatment.

48. Plaintiff remains under the care of his primary care physician and continues to receive medical treatment for his injuries as ordered by his physician.

49. Plaintiff underwent mandatory treatment pursuant to Delta's established and required protocols.

50. On September 17, 2023, Plaintiff sustained another work-related injury while working for Delta. Plaintiff was injured on a Delta aircraft when he tripped and fell as a result of a seat belt left on the ground.

51. Plaintiff's suitcase got tangled in the seat belt on the floor and Plaintiff was forcefully pushed against the first-class suite door causing him injuries before he fell to the ground.

52. Plaintiff reported the injury to Delta and Sedgwick Insurance immediately as required.

53. Sedgwick Insurance accepted liability for Plaintiff's case and approved medical treatment.

54. Plaintiff was off work on disability for several months recovering from the injuries he sustained and is still receiving ongoing treatment ordered by his doctor.

55. Plaintiff was nevertheless harassed by Delta, and penalized for scheduling treatment for his injury which Delta in fact requires, and was informed, contrary to

Delta policy, that future treatments would require him to take a personal or sick day.

56. Although Plaintiff followed Delta's established and required protocols, he was nevertheless harassed by Delta administrators, Ms. Jacqueline Robinson and Ms. Mallory Rongier, and was penalized for scheduling treatment for his injury which Delta in fact requires.

57. Delta required Plaintiff to adhere to an unwritten and unauthorized policy and lengthy process to check in before any follow up treatments appointment and that Delta would decide how to classify any related absence.

58. This arbitrary treatment, for which no written policy existed, exposed Plaintiff to additional performance-related penalties for adhering to Delta's instructions which were not compliant with Delta's own regulations.

59. Despite Plaintiff requests, Delta refused to provide a written policy where this course of conduct was provided for.

60. Delta also engaged in harassing behavior by contacting Plaintiff outside of established channels, making him concerned for his job security for following Delta's established procedures for treatment for work-related injuries.

61. Delta repeatedly engaged in behavior to belittle Plaintiff's injuries and to call into question his receipt of treatment for his injuries despite such treatment being mandatory. Such behavior included penalizing him for receiving treatment and requiring him, by order and via intimidation and pressure, to schedule treatment

11

during his off-time rather than during working hours as required and as he was entitled to do. Delta's harassing conduct extended to questioning his injuries and treatment, inserting itself into Plaintiff's care by determining how to classify the hours required for Plaintiff to obtain mandatory treatment, and, in retaliation for his need for treatment for a work-related injury, requiring him to meet with management personnel who had no role overseeing his job performance with such meetings often taking place on an impromptu basis with little or no notice, in locations not designated or appropriate for such meetings.

62. Plaintiff was further forced to delay necessary treatment and receive treatment on off-days to avoid conflicts with Delta despite the injury having been work-related and regulations mandating his treatment.

63. Delta engaged in harassing behavior by contacting Plaintiff outside of established channels and intimidated him regarding his job security for following Delta established procedures for treatment as mandated by Delta's insurance carrier with respect to work-related injuries.

64. As a result, Plaintiff was forced to delay necessary treatment ordered by his primary care physician and approved by Sedgwick Insurance and forced to get treatment on off days to avoid conflicts with Delta, despite regulations mandating this treatment and despite the injury having been work-related and accepted for coverage by Sedgwick Insurance.

65. Plaintiff is suffering an ongoing retaliation and harassment as a result of communicating via corporate channels to protest Delta's unauthorized and retaliatory behavior regarding treatment of his work-related injury.

66. One such incident occurred on March 18, 2024, when Plaintiff was confronted by Delta supervisor Ms. Mallory Rongier on the terminal concourse, contrary to accepted Delta procedures, after he worked a 12-hour duty day. Plaintiff was on his way out of the terminal at the end of a workday when he was harassed and questioned by Rongier regarding work-related concerns he had raised and informed that he needed provide additional information and clarification regarding his concerns. Plaintiff also suffered retaliation as a result of protesting his treatment through established corporate channels.

67. Upon information and belief, the terminal concourse is not an approved location for employment-related discussions.

68. Additionally, on April 7, 2024, Plaintiff was waiting on an "Airport Standby" when suddenly received a voice mail from Delta supervisor Mallory Rongier informing him of a potential assignment. In an unnecessary and ominous divergence from custom, he was encouraged to come to the employee lounge where the Delta supervisor office is located.

69. Several minutes later, Plaintiff received a text from Delta Air Lines Supervisor informing him he will not be assigned to that trip. According to Delta Air

Lines established protocol assignment of trips are managed solely by "crew scheduling operations" and not by Delta Air Lines supervisors. "Crew scheduling" oversee all daily trip coverage procedures and monitor all flight attendants' trips including flight attendants on standby.

70. Crew scheduling is the sole department who is responsible to contact the standby flight attendant and assign a trip to the standby flight attendant and not by Plaintiff's supervisors who continue to monitor and harass Plaintiff and insinuate themselves in Plaintiff's work environment and his performance of his employment-related tasks.

71. Upon information and belief, Plaintiff's status as a member of a protected class(es) and his request for religious accommodation were motivating and/or but-for factors for Delta's discriminatory and retaliatory of Plaintiff.

**AS AND FOR THE FIRST CAUSE OF ACTION**
**(Religion/National Origin Discrimination Arising Under Title VII)**

72. Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

73. This claim is premised upon Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e, et seq.

74. At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. § 2000e(f).

75. Delta is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

14

76. Delta has been engaged in and interest to engage in a pattern of discrimination against Jewish, Hebrew-speaking and Israeli employees.

77. Delta has been sued recently regarding its treatment of Jewish, Hebrew-speaking and Israeli employees and is in further receipt of multiple complaints regarding such treatment.

78. Delta discriminated and retaliated against Plaintiff when Delta, inter alia, imposed disparate treatment, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules,

78. Delta arbitrarily refused to accommodate Plaintiff's reasonable request for religious accommodation and willfully and arbitrarily treated Plaintiff in a discriminatory manner.

79. Delta willfully and arbitrarily refused to accommodate Plaintiff's religiously based dietary needs and his reasonable request regarding a schedule modification for the Yom Kippur holiday and required Plaintiff to undergo unnecessary arduous and intrusive questioning by Delta.

80. As a direct and proximate result of Defendant's actions, Plaintiff was suffered humiliation, inconvenience, mental distress, and embarrassment.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Religion/National Origin Discrimination Arising Under the New York City Human Rights Law)

81. Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

82. New York City Human Rights Law, N.Y. City Admin. Code § 8-101, et seq., prohibits disparate treatment because of an employee's status in a protected class.

83. Plaintiff is a "person" under §8-102(1) of the New York City Human Rights Law.

84. Delta is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

84. Defendant's discriminatory and disparate treatment of Plaintiff, constituting or in addition creating a hostile work environment, because he is Jewish, Israeli and Hebrew-speaking race/color as a Caucasian/white was in violation of, inter alia, NYCHRL.

85. Delta discriminated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, harassing Plaintiff while her sought treatment for work-related injuries, failing to accommodate Plaintiff's reasonable request for religious accommodation

16

and failure to accommodate his known and reasonable dietary needs, violating his right to seek treatment for work-related injuries without penalty, imposing arbitrary, unnecessary and intrusive prerequisites to the adjudication of reasonable requests for religious accommodation, writing-up or threatening to write-up Plaintiff for non-violations or doing so against Delta custom of enforcement of policies, designating or attempting to designate medically excused absences as sick leave, and otherwise subjecting Plaintiff to adverse and unfavorable actions.

86. Defendant's actions were done intentionally or with reckless indifference to Plaintiffs statutorily protected New York City rights.

87. As a direct and proximate result of intentional and/or reckless Defendant's actions, Plaintiff suffered humiliation, inconvenience, mental distress, and embarrassment.

**AS AND FOR THE THIRD CAUSE OF ACTION**
**(Protected Activity Retaliation Arising Under Title VII)**

88. Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

89. This claim is premised upon Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e.

90. At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. §2000e(f).

91. Delta is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

17

92. Plaintiff opposed Delta' unlawful, discriminatory employment practices and engaged in protected activity under Title VII.

93. Defendant's retaliatory treatment of Plaintiff because of his protected activity in advancing his Title VII rights was in violation of, inter alia, Title VII, 42 U.S.C. § 2000e-3.

94. Delta discriminated and retaliated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, retaliating against and harassing Plaintiff in connection with his constitutionally protected activity in protesting the hardships and unnecessary and unauthorized obstacles to Plaintiff's medical treatment of his work-related injuries,  his questioning of Delta's failure to adhere to its own protocols and procedures, Delta's, designating or attempting to designate medically excused absences as sick leave, and otherwise subjecting Plaintiff to adverse and unfavorable actions in retaliation for his protected activity.

95. Defendant's actions were done intentionally or with reckless indifference to Plaintiff's federally protected Title VII rights.

96. As a direct and proximate result of intentional and/or reckless Defendant's actions, Plaintiff suffered humiliation, inconvenience, mental distress, and embarrassment. The psychological, emotional and economic consequences of the

Defendant's actions continue to date, and, upon information and belief, will continue into the future.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### (Protected Activity Retaliation Arising Under the New York City Human Rights Law)

97. All preceding paragraphs are incorporated by reference as if fully stated herein.

98. New York City Human Rights Law, N.Y. City Admin. Code § 8-101, et seq., prohibits retaliation because of an employee's protected activity.

86. Plaintiff is a "person" under §8-102(1) of the New York City Human Rights Law.

99. Delta is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

100. Defendant's retaliatory treatment of Plaintiff because of his protected activity as an employee advancing his NYCHRL rights was in violation of, inter alia, New York City Human Rights Law, § 8-107.

101. Delta discriminated and retaliated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, retaliating against and harassing Plaintiff in connection with his constitutionally protected activity in protesting the hardships

and unnecessary and unauthorized obstacles to Plaintiff's medical treatment of his work-related injuries,  his questioning of Delta's failure to adhere to its own protocols and procedures, Delta's, designating or attempting to designate medically excused absences as sick leave, and otherwise subjecting Plaintiff to adverse and unfavorable actions in retaliation for his protected activity.

102. Upon information and belief, Delta' actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York City rights, entitling him to punitive damages under the New York City Human Rights Law.

103. As a direct and proximate result of intentional and/or reckless Defendant's actions, Plaintiff suffered humiliation, inconvenience, mental distress, and embarrassment.104. The psychological, emotional and economic consequences of the Defendant's actions continue to date, and, upon information and belief, will continue into the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief jointly and severally as against all of the Defendant:

1. Award compensatory damages in an amount to be determined at trial:

2. Award punitive damages in an amount to be determined at trial:

3. Disbursements, costs and attorneys' fees; and

4. For such other further relief to this Court may seem just and proper.

ALL CONDITIONS PRECEDENT HAVE BEEN PERFORMED OR HAVE OCCURRED PLAINTIFFS DEMAND TRIAL BY JURY

Dated: August 19, 2024

Respectfully submitted,

Steven A. Feldman, Esq.
LAW OFFICE OF STEVEN A. FELDMAN
& ASSOCIATES, PLLC
National Jewish Advocacy Center, Inc.
763 Dogwood Ave
West Hempstead, NY 11552
516-535-9756
steven@safesq.net
*Attorneys for Plaintiff Sasi Sheva*